CP-1998-3                                                                    1

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| In re:<br><br>    Alberto Sepúlveda Girón | Querella<br><br>2001 TSPR 153<br><br>155 DPR ____ |

Número del Caso: CP-1998-3

Fecha: 24/octubre/2001

Oficina del Procurador General:

                         Lcda. Yvonne Casanova Pelosi
                         Procuradora General Auxiliar

Abogado de la Parte Querellada:
                         Lcdo. Orlando Martínez Sotomayor

Abogado de la Parte Querellante:
                         Lcdo. José Juan Nazario de la Rosa

Materia: Conducta Profesional
         (La suspensión es efectiva a partir del 2 de noviembre de 2001, fecha en que
         se le notificó al abogado el Per Curiam y Sentencia)

     Este documento constituye un documento oficial del Tribunal Supremo que está
     sujeto a los cambios y correcciones del proceso de compilación y publicación
     oficial de las decisiones del Tribunal. Su distribución electrónica se hace
     como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

In re:

Alberto Sepúlveda Girón                     CP-98-3          Conducta
                                                            Profesional

PER CURIAM

San Juan, Puerto Rico, a 24 de octubre de 2001.

El licenciado Alberto Sepúlveda Girón fue admitido, por este Tribunal, al ejercicio de la abogacía en el Tribunal General de Justicia de Puerto Rico el 28 de abril de 1966, y en la actualidad su nombre se encuentra en el Registro de Abogados. El 22 de junio de 1966 le fue expedida autorización para ejercer como notario público.

Para el año 1986 el licenciado Alberto Sepúlveda Girón realizó gestiones con la señora Ana María Marqués, quien era su cliente, para que le prestara determinada suma de dinero al matrimonio compuesto por el señor Jorge Luhring y la señora Brunilda Zayas, quienes habían sido también sus clientes. En el pasado el licenciado Sepúlveda Girón había realizado gestiones para                    el                      señor

Luhring dirigidas a obtener préstamos de terceras personas.[1] En el mes de abril de 1986, la señora Marqués les había entregado la suma de veinte mil dólares ($20,000) en calidad de préstamo.[2] Posteriormente, el licenciado Sepúlveda Girón le solicitó nuevamente a la señora Marqués un préstamo para el matrimonio Luhring-Zayas, esta vez por la cantidad de treinta mil dólares ($30,000). La señora Marqués solicitó una garantía hipotecaria sobre la totalidad del préstamo por cincuenta mil dólares ($50,000), como condición para desembolsar los treinta mil dólares (30,000) solicitados. Para lograr obtener dicha suma adicional en calidad de préstamo, el licenciado Sepúlveda Girón se comprometió como codeudor solidario a pagar la totalidad de la deuda antes mencionada, para sustituir la garantía hipotecaria solicitada.[3] En virtud de lo anterior, la señora Marqués le entregó al licenciado Sepúlveda Girón los restantes treinta mil dólares ($30,000), quien, luego de retener una cantidad de dinero,[4] le entregó el remanente al matrimonio Luhring-Zayas.

El 11 de julio de 1986 los esposos Luhring-Zayas suscribieron ante el licenciado Sepúlveda Girón, como notario público, un pagaré al portador por la suma de cincuenta mil dólares ($50,000), con vencimiento a su presentación. El licenciado Sepúlveda Girón fijó el número de affidávit 7483 al referido documento, mediante el cual reconoció la firma de los esposos Luhring-Zayas. Sin embargo, el referido affidávit no fue anotado en su registro de affidávits ni incluido en el índice notarial correspondiente a la semana que finalizó el 13 de julio de 1986, remitido por el licenciado Sepúlveda Girón a la Oficina de Inspección de Notarías.[5]

Para el año 1989, la señora Marqués entabló una acción en cobro de dinero contra los esposos Luhring-Zayas, el licenciado Sepúlveda Girón y la esposa de éste, así como las sociedades de gananciales compuestas por ambos matrimonios, ante el antiguo Tribunal Superior, Sala de San Juan, civil número KCD89-1961 (806). El 7 de junio de 1995, durante la pendencia de dicho litigio, el licenciado Sepúlveda Girón, aquí querellado, pretendió enmendar su índice notarial correspondiente al mes de julio de 1986, a los fines de intercalar en el mismo que el affidávit número 7483, emitido por él, en realidad correspondía al número 7278A en su registro.[6]

---

[1] Así surge de la deposición tomada al señor Jorge Luhring, que es parte de nuestro expediente.

[2] Informe del Comisionado Especial, pág. 3.

[3] Íd.

[4] Según el Comisionado Especial, del expediente no surge con precisión cuál fue la suma de dinero por concepto de honorarios que retuvo el licenciado Sepúlveda Girón. No obstante, el Comisionado Especial señala que de la deposición que se le tomó al señor Luhring, éste declaró que el referido licenciado retuvo una cantidad entre diez mil ($10,000) a quince mil dólares ($15,000). Informe del Comisionado Especial, pág. 4, n. 1.

[5] Informe del Comisionado Especial, pág. 4.

[6] Íd., pág. 4.

El 19 de junio de 1995, el Tribunal de Primera Instancia dictó sentencia enmendada, en forma sumaria, en el pleito antes indicado, imponiéndole responsabilidad solidaria al licenciado Sepúlveda Girón por la totalidad de la deuda reclamada, más los intereses y honorarios de abogados.[7] Dicho Tribunal había comenzado a escuchar la prueba de la parte demandante cuando dictó la referida sentencia, basándose en que el mencionado letrado era prima facie deudor solidario y, por lo tanto, responsable del pago de lo adeudado. Apelada la misma ante el Tribunal de Circuito de Apelaciones, éste, mediante sentencia dictada el 17 de diciembre de 1996, revocó el dictamen emitido por el Tribunal de Primera Instancia. El referido foro apelativo concluyó que fue erróneo disponer sumariamente sobre la reclamación de responsabilidad solidaria del licenciado Sepúlveda Girón, pues no se le brindó oportunidad a éste para rebatir la prueba presentada por la parte demandante en su contra. Finalmente, devolvió el caso al Tribunal de Primera Instancia para la continuación de los procedimientos.[8]

El 3 de noviembre de 1997, la Oficina del Procurador General presentó ante este Tribunal un informe sobre la conducta profesional del licenciado Sepúlveda Girón. Mediante resolución de 5 de diciembre de 1997, le ordenamos a dicha Oficina formular querella contra el referido letrado. El Procurador General presentó el 22 de enero de 1998 la querella correspondiente ante este Tribunal,[9] formulando contra el licenciado Sepúlveda Girón los cargos siguientes:

CARGO I

El abogado Sepúlveda Girón violentó los principios establecidos en el Canon 21 de Ética Profesional el cual, entre otras cosas, obliga a todo abogado evitar incurrir en conflicto de interés entre clientes y evitar el conflicto entre sus intereses personales y los de su cliente.

CARGO II

El abogado Sepúlveda Girón violentó la Regla 12 del Reglamento Notarial el cual, entre otras cosas, obliga a todo notario en caso de un error en [sic] omisión en el índice mensual sobre actividad notarial, a someter un índice mensual enmendado con la correspondiente explicación conforme al procedimiento de presentación tardía.

CARGO III

El abogado Sepúlveda Girón violentó los principios establecidos en el Canon 35 de Ética Profesional el cual, entre otras cosas, obliga a todo abogado a ser sincero y honrado con sus clientes.

CARGO IV

El abogado Sepúlveda Girón violentó los principios establecidos en el Canon 38 de Ética Profesional el cual, entre otras cosas, [se] obliga a todo abogado a desempeñarse en su vida profesional como en su vida privada en forma digna y honorable.

---

[7] Íd., pág. 5.
[8] Íd., pág. 5.

[9] Dicha querella fue formulada como consecuencia de la queja presentada en la Oficina del Procurador General por la señora Ana María Marqués el 3 de marzo de 1994 contra el licenciado Alberto Sepúlveda Girón.

Devuelto el caso sobre cobro de dinero por el Tribunal de Circuito de Apelaciones al Tribunal de Primera Instancia, la vista en su fondo fue celebrada el 5 de marzo de 1998.

El 20 de marzo de 1998, el licenciado Sepúlveda Girón presentó ante este Tribunal su contestación a la querella. Alegó que entendió, en todo momento, que no existía conflicto de intereses entre él y su cliente (señora Ana María Marqués), por el hecho de que le hubiese prestado dinero al señor Jorge Luhring. El querellado no veía la existencia del referido conflicto, por el hecho de que otras personas le prestaran dinero al señor Luhring para sus negocios. Expresó que la quejosa, señora Ana M. Marqués, así como otras personas que le prestaron dinero al señor Luhring para sus negocios, conocían entre sí que eran acreedores de éste. Arguyó que no es correcto que él no fuera sincero y honrado con su cliente. Adujo que él realizó una investigación en el Registro de la Propiedad, y el señor Luhring no tenía margen para ofrecer garantía hipotecaria alguna sobre el préstamo de cincuenta mil dólares ($50,000) que le hizo su cliente, la señora Marqués. Expresó que tal información se la suministró previamente a la señora Marqués, y aún así ella aceptó realizar la transacción, por lo que él no le ocultó nada a su cliente. Aludió a la condición de inversionista de su cliente; que conoce los riesgos inherentes a una inversión y los asumió.

El querellado alegó que al advenir en conocimiento de la omisión de enviar un índice mensual enmendado para informar el otorgamiento del pagaré, presentó el mismo con una explicación al efecto. Arguyó que no medió mala fe de su parte al omitir consignar en su registro de affidávits el otorgamiento del referido pagaré. Adujo que él no obtuvo ningún beneficio o lucro con tal omisión. Expresó que la validez del pagaré no se afectaba en absoluto por ese hecho. Aludió a que su validez no dependía de si estaba o no autenticado ante notario público, sino que cumpliera con los requisitos dispuestos por el Código de Comercio. Afirmó que dicho documento cumple con los referidos requisitos, hecho que expresa surge de la faz del mismo. Alegó que la quejosa no sufrió perjuicio alguno por tal omisión.

Designamos, el 24 de abril de 1998, al licenciado Enrique Rivera Santana como Comisionado Especial para entender en este asunto, quien ordenó, el 20 de noviembre de 1998, la paralización de los procedimientos disciplinarios hasta que se dilucidara el procedimiento sobre cobro de dinero que se estaba ventilando en el Tribunal de Primera Instancia y que estaba vinculado en su cuadro fáctico con la querella formulada por el Procurador General.

Pendiente de que se dictara sentencia por el Tribunal de Primera Instancia en el referido caso sobre cobro de dinero, el 13 de marzo de 2000 las partes suscribieron un acuerdo transaccional privado, mediante el cual el licenciado Sepúlveda Girón se obligó a pagar, y efectivamente pagó, la suma de ciento dos mil dólares ($102,000) a la parte demandante, aquí quejosa, señora Marqués, quien solicitó de ese Tribunal el desistimiento con perjuicio

de su demanda sobre cobro de dinero.[10]  En esa misma fecha, la quejosa presentó moción ante este Tribunal informando de tal hecho y que no tenía interés en los procedimientos disciplinarios instados contra el querellado.

A la vista pautada para el 15 de mayo de 2000 compareció el Procurador General representado por la licenciada Ivonne Casanova Pelosi.  El querellado compareció representado por el licenciado Orlando Martínez Sotomayor.  Luego de un diálogo entre las partes, en ausencia del Comisionado Especial, decidieron dejar el caso sometido por el expediente, bajos los términos siguientes:

> **El querellado acepta los cargos, según aparecen formulados en la querella.**  (Énfasis nuestro.)

> En el término de diez (10) días el querellado someterá, para ser considerado por el Comisionado Especial al someter su informe, copia de la estipulación acordada con la parte quejosa (en el caso que con relación a los hechos que dieron lugar a la querella se ha venido tramitando en el Tribunal de Primera Instancia).  Se hizo constar que como parte de la estipulación se pagó a la quejosa la suma de $102,000.00 [sic] y que ésta indicó no tener interés en el procedimiento disciplinario.

> Se estipuló por las partes que el querellado ha sufrido dos "derrames cerebrales".  El querellado habrá de someter al Procurador copia de informes médicos para acreditar su condición médica.

El Comisionado Especial rindió su informe el 30 de junio de 2000, formulando sus determinaciones de hechos.  Evaluada la querella presentada por el Procurador General, y sus demás escritos, la posición del querellado, el Informe del Comisionado Especial y el resto de los documentos que obran en el expediente de este caso, nos encontramos en posición de resolver el asunto ante nos.  Veamos.

II

El Canon 21 de Ética Profesional[11] dispone, en lo aquí pertinente, lo siguiente:

**Canon 21. Intereses encontrados**

> El abogado tiene para con su cliente un deber de lealtad completa.  Este deber incluye la obligación de divulgar al cliente todas las circunstancias de sus relaciones con las partes y con terceras personas, y cualquier interés en la controversia que pudiera influir en el cliente al seleccionar su consejero.  Ningún abogado debe aceptar una representación legal cuando su juicio profesional pueda ser afectado por sus intereses personales.

> No es propio de un profesional el representar intereses encontrados.  Dentro del significado de esta regla, un abogado representa intereses encontrados cuando, en beneficio de un cliente, es su deber abogar por aquello a que debe oponerse en cumplimiento de sus obligaciones para con otro cliente.

> ...Un abogado no debe aceptar la representación de un cliente en asuntos que puedan afectar adversamente cualquier interés de otro cliente anterior...  Será altamente impropio de un abogado el utilizar las confidencias o secretos de un cliente en perjuicio de éste.

> ...

El propósito esencial de la referida norma ética es reglamentar la conducta profesional que, de alguna forma, puede poner en peligro el principio de confidencialidad que caracteriza la relación fiduciaria de abogado-cliente y en esa forma menoscabar la

---

[10] Íd., pág. 5.
[11] 4 L.P.R.A. Ap. IX, C. 21.

imagen de la justicia y la confianza que el ciudadano tiene en el sistema.[12] El conflicto de intereses contemplado en el Canon 21, supra, presenta tres (3) situaciones que deben evitarse por los abogados, a saber: que en beneficio de un cliente se abogue por aquello a lo que el letrado debe oponerse en cumplimiento de sus obligaciones para con otro cliente; que un abogado acepte la representación de un cliente en asuntos que puedan afectar adversamente cualquier interés de un cliente anterior; y que un abogado acepte una representación legal, o que continúe en ella, cuando su juicio profesional pueda ser afectado por sus intereses personales.[13]

El Canon 21, supra, prohíbe la representación legal **cuando existe la posibilidad** de que el abogado incurra en conflicto de intereses.[14] Hemos resuelto que existe un conflicto de intereses cuando hay alguna circunstancia que impide la representación libre y adecuada por parte del abogado y vulnera la lealtad absoluta que le debe todo abogado a su cliente.[15]

Para determinar la existencia del conflicto de intereses por razón de la representación dual del abogado de clientes con intereses encontrados deberá utilizarse la fórmula de la relación sustancial entre los asuntos presentados por cada uno de los clientes al abogado. No tiene que tratarse de asuntos idénticos o similares. Basta que los asuntos de los que emane el conflicto que veda la representación legal del abogado estén sustancialmente relacionados entre sí.[16] No puede aceptarse por un abogado la representación de un cliente en asuntos que puedan afectar adversamente cualquier interés de otro anterior, independientemente de que ambos clientes lo aprueben.[17] El Canon 21, supra, prohíbe tanto la representación concurrente como sucesiva, siempre que exista una "relación sustancial" entre el asunto anterior y posterior, que implica intereses adversos. Sólo se requiere una relación de abogado y cliente, y que tal representación resulte adversa y esté sustancialmente relacionada con la anterior.[18]

El Canon 21, supra, veda la representación legal por un abogado de un cliente con quien existen intereses conflictivos en relación a bienes o intereses propios del abogado.[19] Existe tal conflicto cuando los intereses propios del abogado imposibilitan la

---

[12] Sarah Torres Peralta, El Derecho Notarial Puertorriqueño, Publicaciones STP, Inc., 1995, Capítulo IV, pág. 4.49.

[13] In re Toro Cuberge, 140 D.P.R. 514 (1996).

[14] In re Carlos Roberto Soto, 134 D.P.R. 772 (1993); Pueblo v. Padilla, 127 D.P.R. 698 (1991); In re Belén Trujillo, 126 D.P.R. 734 (1990); Sánchez Rodríguez v. López Jiménez, 116 D.P.R. 172 (1985); In re Carreras Rovira y Suárez Zayas, 115 D.P.R. 778 (1984); In re Concepción Suárez, 111 D.P.R. 486 (1981).

[15] In re Belén Trujillo, supra.

[16] Torres Peralta, op. cit., Capítulo IV, pág. 4.51.

[17] Íd.; Federación Pesc. Playa Picúas v. U.S., Inc., 135 D.P.R. 303 (1994).

[18] In re Carreras Rovira, supra.

[19] Federación Pesc. Playa Picúas v. U.S., Inc., supra.

representación adecuada del cliente, pues son contrarios a su deber de lealtad hacia éste. En un caso donde se manifiesta este tipo de conflicto, el abogado está frente al dilema de cumplir, o dejar de hacerlo, con su deber de representar a su cliente de manera efectiva, por ser incompatible con la defensa de sus propios intereses.[20] Cuando esto ocurre, la representación adecuada del cliente conlleva, en la mayoría de los casos, perjudicar los intereses personales del abogado.

En todo caso en que el abogado represente intereses encontrados entre clientes concurrentes o sucesivos, o que los intereses del cliente estén encontrados con los intereses personales propios del abogado, éste deberá renunciar de inmediato la representación profesional inadvertidamente aceptada en su origen.[21]

Para determinar la situación de posible conflicto de intereses en cualquiera de las situaciones antes indicadas, es indispensable tener en mente que la prohibición del Canon 21, supra, requiere no sólo el concepto de la existencia actual del conflicto, sino que se extiende igualmente a conflictos aparentemente existentes, pero que llevan consigo la semilla de un posible o potencial conflicto futuro. Es decir, está también vedado al abogado asumir la representación legal de clientes cuando resulta razonablemente anticipable un futuro conflicto de intereses, aun cuando sea inexistente al momento de la aceptación de la representación legal.[22]

Las gestiones realizadas por el querellado con su cliente, señora Ana Maria Marqués, para que ésta le prestara una suma de dinero al señor Jorge Luhring, quien previamente también había sido su cliente en gestiones para obtener préstamos de terceras personas y a quien el letrado querellado también le había prestado dinero, constituye una reñida con lo preceptuado en el Canon 21, supra, en las vertientes antes indicadas. Del producto de dicho préstamo el querellado retuvo aproximadamente diez mil dólares ($10,000), como suma a ser acreditada a la deuda que el señor Luhring tenía con él. Resulta evidente que su juicio profesional sobre el otorgamiento del préstamo estaba directamente afectado por sus intereses personales. También estaba en conflicto su obligación de abogar en representación de la señora Marqués, para que el señor Luhring le otorgara la garantía hipotecaria solicitada por ésta con el propósito de proteger su inversión, con los intereses del señor Luhring que él había representado. En este caso el querellado conocía de la situación del señor Luhring, a quien sus múltiples compromisos económicos no le permitía garantizar hipotecariamente el préstamo de cincuenta mil dólares ($50,000) que le estaba otorgando la señora Marqués. No obstante, para persuadir a la quejosa a que desembolsara la suma final de treinta mil dólares ($30,000), quien lo condicionó a que mediara una garantía

---

[20] Íd.; In re Rivera Arvelo, 132 D.P.R. 840 (1993).

[21] In re Rojas Lugo, 114 D.P.R. 687, 690 (1983); In re Roldán González, 113 D.P.R. 238, 242-243 (1982).

hipotecaria, le ofreció su garantía como codeudor solidario sobre la totalidad de la obligación.  Como resultado de esa gestión se benefició personalmente.

Existía una relación sustancial entre los asuntos de sus dos clientes que implicaba intereses adversos.  La representación que el querellado realizó de la señora Marqués era adversa con los intereses de sus anteriores clientes, el matrimonio Luhring-Zayas, y estaba sustancialmente relacionada con gestiones que había realizado previamente en representación de estos últimos.

Concluimos que el querellado violó el Canon 21, supra, en las vertientes antes indicadas.

El Canon 35 de Ética Profesional[23] dispone, en lo aquí pertinente, lo siguiente:

> La conducta de cualquier miembro de la profesión legal ante los tribunales, para con sus representados y en las relaciones con sus compañeros debe ser sincera y honrada.
>
> No es sincero ni honrado el utilizar medios que sean inconsistentes con la verdad...

Este canon le impone a los abogados unas normas mínimas de conducta que sólo pretenden preservar el honor y la dignidad de la profesión y, por ello, deben ser observadas por los abogados, no sólo en su dimensión profesional, sino también en toda faceta en la que se desempeñen.[24]

El querellado infringió su deber de sinceridad y honradez para con la señora Marqués y los esposos Luhring-Zayas.  No le informó a la señora Marqués de que él había hecho gestiones a favor del referido matrimonio con terceras personas para conseguirles dinero por concepto de préstamo, y mucho menos le informó que del préstamo que le habría de suministrar ella a esas personas se le abonaría a él una cantidad por concepto de otro préstamo que él le había facilitado de su propio peculio a estos últimos.

Todo abogado tiene la ineludible obligación de ajustarse a la fidelidad de los hechos, tanto en su gestión profesional, así como en sus gestiones personales.  Ceñirse a la verdad va más allá que ocasionar perjuicio a tercero o deliberadamente defraudar o engañar.  Hemos reconocido que existe cierta conducta personal de un abogado que puede estar fuera del alcance del Canon 35, supra.[25]  No obstante, también hemos señalado que el deber de sinceridad y honradez que impone la referida norma ética cobija aquellas actuaciones de un abogado en las que, actuando como ciudadano común, pretende realizar actos o negocios de trascendencia jurídica.  La verdad es un atributo inseparable del ser abogado y, sin

---

[22] Torres Peralta, op. cit., Capítulo IV, pág. 4.52.

[23] 4 L.P.R.A. Ap. IX, C. 35.

[24] In re Belk Serapión, res. el 28 de junio de 1999, 99 TSPR 121, 148 D.P.R. ___ (1999), 99 J.T.S. 126.

[25] In re Silvagnoli Collazo, res. el 29 de junio de 2001, 2001 T.S.P.R. 106, 154 D.P.R.___ (2001), 2001 J.T.S. 109.

la misma, no podría la profesión jurídica justificar su existencia.[26]  El querellado violó

el Canon 35, supra, pues no informó la verdad de la situación conflictiva en que se encontraba

entre sus dos clientes y sus intereses personales.

El Artículo 5(a) de la Ley Notarial de Puerto Rico[27] dispone lo siguiente:

> Ningún notario podrá autorizar instrumentos en el que él intervenga como parte o que contenga disposiciones a su favor.  Tampoco podrá autorizarlos si alguno de los otorgantes es pariente suyo dentro del cuarto grado de consanguinidad o segundo de afinidad, excepto cuando aquél comparezca en el instrumento en calidad representativa.

El querellado otorgó como notario público un pagaré al portador por la suma de

cincuenta mil dólares ($50,000), con vencimiento a la presentación, suscrito por los esposos

Luhring Zayas, aun cuando había ofrecido ser garantizador solidario de dichos deudores

frente a la acreedora, la señora Marqués.  El querellado no compareció como parte en el

documento autenticado ante sí como notario público.  No obstante, él ofreció su garantía

solidaria en el mismo y se benefició personalmente del negocio jurídico que viabilizó el

documento por él autenticado en calidad de notario público.  No hay duda alguna que violó

lo dispuesto en el estatuto antes indicado.  No obstante, no se le presentaron cargos por

tal actuación.[28]

El Canon 38 de Ética Profesional[29] dispone, en lo aquí pertinente, lo siguiente:

> El abogado deberá esforzarse, al máximo de su capacidad, en la exaltación del honor y dignidad de su profesión, aunque el así hacerlo conlleve sacrificios personales y debe evitar hasta la apariencia de conducta profesional impropia.

> Por razón de la confianza en él depositada como miembro de la ilustre profesión legal, todo abogado, tanto en su vida privada como en el desempeño de su profesión, debe conducirse en forma digna y honorable.  En observancia de tal conducta, el abogado debe abstenerse en absoluto de aconsejar y asesorar a sus clientes en otra forma que no sea el fiel cumplimiento de la ley y el respeto al poder judicial y a los organismos administrativos.

La apariencia de conducta impropia puede resultar muy perniciosa al respeto de la

ciudadanía por sus instituciones de justicia y por la confianza que los clientes depositan

en sus abogados.  La apariencia de conducta impropia o conflicto de intereses puede tener

un efecto tan dañino sobre la imagen, confianza y respeto al público por su gobierno, como

la verdadera impropiedad ética.  No obstante, la apariencia de conducta impropia tiene que

sostenerse sobre la impresión que se da al público de la violación efectiva de alguno de

los Cánones de Ética Profesional.  Ciertamente, la conducta del querellado constituye, en

la realidad y en apariencia, una impropia conforme al Canon 38, supra.  Dicho comportamiento

no sólo atentó contra la relación de fiducia y confidencialidad idónea de toda relación

---

[26] In re Martínez, Odell II, res. el 25 de junio de 1999, 99 TSPR 119, 148 D.P.R. ___ (1999), 99 J.T.S. 124.

[27] 4 L.P.R.A. sec. 2005(a).

[28] No consideraremos tal conducta, a los efectos de ejercer nuestra jurisdicción disciplinaria, pues el querellado no tuvo la oportunidad de enfrentarse a un cargo específico formulado por la Oficina del Procurador General sobre este asunto en particular.

abogado-cliente, sino que también perjudicó el respeto y confianza del pueblo en nuestro sistema de gobierno.[30]

En In re Colón Ramery e In re Colón Ramery II,[31] nos pronunciamos sobre la función dual de un abogado notario en un mismo caso. Distinguimos el ejercicio de la abogacía y el del notariado. Explicamos que el abogado representa los intereses de su cliente, en cambio **el notario representa la fe pública**.[32] El notario, a diferencia del abogado, está llamado a **ser imparcial** con todos los otorgantes del instrumento que autorice.[33] De hecho, se aclara en estos casos que para el notariado nuestro el elemento de imparcialidad es de gran importancia, y este debe regir las actuaciones de todo notario. De ahí que, entre otras, nos expresáramos a los efectos de que **no basta ser imparcial también hay que aparentarlo**.[34]

Además, en la reconsideración de In re Colón Ramery, supra, resolvimos que la imparcialidad del notario no puede limitarse al momento del otorgamiento, sino que debe estar presente **durante todos los procesos conducentes y posteriores al otorgamiento**.[35]

---

[29] 4 L.P.R.A. Ap. IX, C. 38.

[30] In re Vélez Barlucea, res. el 26 de octubre de 2000, 2000 TSPR 158, 152 D.P.R. ___ (2000), 2000 J.T.S. 170.

[31] 133 D.P.R. 555 (1993); 138 D.P.R. 791 (1995).

[32] En In re Meléndez Pérez, 104 D.P.R. 770 (1976), explicamos que el notario no es simple observador del negocio jurídico que ante él se realiza, limitando su actuación a cerciorarse de la identidad de partes y autenticidad de las firmas. Su función, por ser pública, trasciende la de un autómata legalizador de firmas y penetra en el campo de la legalidad de la transacción que ante él se concreta.

[33] "El ejercicio de la abogacía y el del notariado son dos cosas distintas. El abogado notario ha de ser escrupuloso en deslindar los campos. El abogado representa los intereses de un cliente. El notario no representa a cliente alguno. Representa la fe pública. Es el testigo por excelencia que ha de dar forma al negocio convenido, y ha de advertir a los otorgantes de los aspectos legales del instrumento que ellos otorgan y que él autoriza. El notario no es, en esa función, abogado de ninguno de los otorgantes. In re Lavastida, et al, 109 D.P.R. 45, 86 (1979), opinión del Juez Asociado señor Irizarry Yunque." In re Colón Ramery, supra, pág. 562.

[34] "En reiteradas ocasiones hemos sostenido que el abogado tiene que desempeñarse con dignidad y alto sentido del honor, aunque al así hacerlo le represente ciertos sacrificios personales. Asimismo, hemos recalcado que éste tiene el deber de evitar hasta la apariencia de conducta profesional impropia; In re Meléndez Pérez, 104 D.P.R. 770, 772 (1976); In re Cancio Sifre, 106 D.P.R. 386, 398-399 (1977); In re Rojas Lugo, 114 D.P.R. 687, 691 (1983). Esta norma adquiere mayor relevancia cuando se examina la actuación del abogado en su función como notario, puesto que éste representa la fe pública notarial." In re Colón Ramery, supra, pág. 562.

[35] En In re Colón Muñoz, 131 D.P.R. 102 (1992) expresamos, de modo similar, lo siguiente:

En el ejercicio de su ministerio y en el descargo de la fe pública en él depositada, el Notario no puede tomar partido o bando, porque representa la ley para todas las partes. Su obligación de ilustrar, de orientar y de advertir ha de desplegarla para todos por igual, con imparcialidad.

El notario es custodio de la fe pública y como tal, cuando autoriza un documento, presuntamente da fe y se cerciora de que ese instrumento público cumple con todas las formalidades de la ley, de que es legal y verdadero y de que se trata de una transacción legítima y válida. Es precisamente esta condición de certeza y confianza en sus actuaciones lo que le brinda eficacia y garantía al documento notarial. Por eso, es imprescindible que el notario observe la mayor pureza y honestidad en el descargo de la fe pública notarial. Otorgar un documento notarial en contravención al Reglamento de la Ley Notarial de Puerto Rico[36] constituye una violación por el notario del Canon 38, supra. No se requiere que el notario haya faltado a la verdad intencionalmente para faltar a su fe notarial y al Canon 38, supra. Su violación puede ser el resultado de un desempeño profesional carente de la cautela y el celo que demanda la función pública del notario.[37] No registró el otorgamiento del referido pagaré al portador en su libro de affidávits, así como tampoco lo incluyó en su informe mensual a la Oficina de Inspección de Notaría. Tampoco subsanó esa omisión en la forma dispuesta por la Regla 12 del Reglamento Notarial.[38] La conducta del querellado, en su función pública como notario, constituye causa para la nulidad del pagaré al portador otorgado por él.[39] Ciertamente el querellado violó el Canon 38, supra, tal y como fue imputado en la querella del Procurador General.

### III

Por los fundamentos antes expuestos, considerado el hecho de que el querellado aceptó los cargos formulados por el Procurador General, atendida la gravedad de su conducta, y mediando como atenuante que satisfizo a la quejosa lo adeudado, procede que decretemos la suspensión del licenciado Alberto Sepúlveda Girón del ejercicio de la profesión de abogado y notario, por un término de seis (6) meses, a partir de la notificación de la sentencia a dictarse y hasta que otra cosa disponga este Tribunal.

Se dictará sentencia de conformidad.

---

[36] 4 L.P.R.A. Ap. XXIV, R. 1, et seq.

[37] In re Vera Vélez, res. el 5 de abril de 1999, 99 TSPR 46, 148 D.P.R. ___ (1999), 99 J.T.S. 51.

[38] 4 L.P.R.A. AP. XXIV, R. 12.

[39] Artículo 60 de la Ley Notarial de Puerto Rico, 4 L.P.R.A. sec. 2095; Regla 73 del Reglamento Notarial, 4 L.P.R.A. Ap. XXIV, R. 73.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO


In re:

                                                     Conducta

Alberto Sepúlveda Girón                    CP-98-3        Profesional


SENTENCIA


San Juan, Puerto Rico, a 24 de octubre de 2001.

      Por los fundamentos expuestos en la Opinión <u>Per Curiam</u> que antecede, la cual se hace formar parte íntegra de la presente, se dicta Sentencia decretando la suspensión inmediata de Alberto Sepúlveda Girón del ejercicio de la notaría y de la abogacía por un término de seis (6) meses, contados a partir de la notificación de esta Sentencia y hasta que otra cosa disponga este Tribunal.

      Le imponemos a Alberto Sepúlveda Girón el deber de notificar a todos sus clientes de su presente inhabilidad de seguir representándolos, les devuelva cualesquiera honorarios recibidos por trabajos no realizados e informe oportunamente de su suspensión a los distintos foros judiciales y administrativos del país. Deberá, además, certificarnos dentro de un término de treinta (30) días, a partir de su notificación, el cumplimiento de estos deberes, notificando también al Procurador General.

      La Oficina del Alguacil de este Tribunal procederá, de inmediato, a incautarse de la obra notarial de Alberto Sepúlveda Girón, incluyendo su sello notarial, luego de lo cual entregará la misma a la Oficina de Inspección de Notarías para el correspondiente examen e informe a este Tribunal.

Lo acordó, manda el Tribunal y certifica la Secretaria del Tribunal Supremo.  El Juez Presidente señor Andréu García y el Juez Asociado señor Fuster Berlingeri no intervinieron. El Juez Asociado señor Rebollo López concurre, sin opinión escrita.


Isabel Llompart Zeno
Secretaria del Tribunal Supremo