EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| In re: | |
|--------|--------------------|
| | 2023 TSPR 116 |
| Elaine Santos Negrón | 212 DPR ___ |

Número del Caso: TS-9,614


Fecha: 26 de septiembre de 2023


Oficina de Inspección de Notarías:

    Lcdo. Manuel E. Ávila De Jesús
    Director

Oficina del Procurador General:

    Lcdo. Omar Andino Figueroa
    Subprocurador General

    Lcda. Yaizamarie Lugo Fontánez
    Procuradora General Auxiliar

    Lcda. Juliana N. Castro Ramos
    Procuradora General Auxiliar


Abogada de Elaine Santos Negrón:

    Por derecho propio



Materia: Conducta Profesional – Suspensión inmediata e indefinida del ejercicio de la abogacía por violación a los Cánones 9, 33, 35 y 38 del Código de Ética Profesional.

Este documento está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal Supremo. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

In re:

Elaine Santos Negrón                    TS-9,614

*PER CURIAM*

En San Juan, Puerto Rico, a 26 de septiembre de 2023.

Es nuestro deber descargar cabalmente nuestra facultad disciplinaria sobre una integrante de la profesión legal que se ha apartado flagrante y deshonrosamente de los preceptos éticos que la gobiernan. Por los fundamentos que exponemos a continuación, suspendemos a la letrada de epígrafe de la práctica de la abogacía de manera inmediata e indefinida.

I

La Lcda. Elaine Santos Negrón (licenciada Santos Negrón o letrada) fue admitida al ejercicio de la abogacía en 1990 y al ejercicio de la notaría en 1991.

En lo pertinente, tras una petición urgente que

nos realizó la Oficina de Inspección de Notarías (ODIN), el 21 de noviembre de 2022 ordenamos la incautación preventiva de la obra protocolar y el sello notarial de la licenciada Santos Negrón. Subsiguientemente, el 29 de noviembre de 2022 el personal de alguacilazgo diligenció nuestra orden e incautó tanto la obra protocolar como el sello notarial de la letrada. El 8 de febrero de 2023, separamos a la licenciada Santos Negrón de manera indefinida de la práctica de la notaría por incurrir en múltiples infracciones a la *Ley Notarial de Puerto Rico*, Ley Núm.75 de 2 de julio de 1987, según enmendada, 4 LPRA sec. 2002 et seq. (Ley Notarial), y por quebrantar el principio de la fe pública notarial. Véase: In re Santos Negrón, 2023 TSPR 11, 211 DPR __ (2023).[1]

Ulteriormente, el 2 de junio de 2023 ODIN presentó un escrito ante este Tribunal en el que informó que obtuvo una copia de una declaración jurada, con fecha de **24 de abril de 2023**, que aparentaba haber sido autenticada, firmada y sellada por la licenciada Santos Negrón. Esto, a pesar de que, el 29 de noviembre de 2022 se incautó preventivamente su obra protocolar y el sello notarial, los cuales se encontraban bajo la custodia de ODIN, y de que el 8 de febrero de 2023 se decretó su suspensión indefinida del ejercicio del notariado.[2] A tal efecto, ODIN señaló que, de ser cierto lo anterior, en

---

[1] El patrón de incumplimiento de la licenciada Santos Negrón con los requerimientos de ODIN en el proceso de inspección de su obra protocolar, así como sus infracciones a varios preceptos legales que rigen la práctica de la notaría, redundaron en su suspensión inmediata e indefinida.
[2] Según ODIN, del documento se apreciaba lo que parecía ser el sello que la licenciada Santos Negrón utilizaba en su desempeño notarial antes de decretarse su suspensión, al igual que una firma que era similar o igual a aquella registrada en los acervos de la Secretaría de este Tribunal y que la letrada estampaba en los documentos que remitía a ODIN.

el tráfico jurídico circulaba al menos un documento que podría considerarse nulo en su origen, por razón de que fue presuntamente legitimado por una fedataria que carecía de autorización para actuar como tal.[3]

Con su comparecencia, ODIN incluyó una copia de la declaración jurada en controversia. De esta surge que, el 24 de abril de 2023, la licenciada Santos Negrón autorizó el testimonio de legitimación de firmas identificado con el número 51,845, mediante el cual el Sr. Miguel A. Vázquez Oliveras vendió, por $4,000, al Sr. José D. Vázquez Oliveras y a la Sra. Carmen Nydia Burgos Vázquez, un panteón localizado en el lote 11-A del cementerio Sinaí Memorial Park del Municipio de Morovis, Puerto Rico. Además, se hizo constar que, a partir de ese día, los compradores tomarían posesión del panteón.

El 8 de junio de 2023, la licenciada Santos Negrón replicó a los planteamientos de ODIN y expuso lo siguiente:

1. Que desde que incautaron su sello notarial el 29 de noviembre de 2022, "no pos[eía] ningún sello notarial adicional".[4]

2. Que a su mejor recuerdo, realizó la declaración jurada objeto de este procedimiento disciplinario entre el 25 y 26 de noviembre de 2022, pero que, en ese momento, no contaba con un sello de la Sociedad para Asistencia Legal de Puerto Rico (SAL) en su oficina, por lo que informó a los comparecientes que pasaran en una fecha posterior a recoger el documento.

---

[3] ODIN también señaló que, a la luz de su análisis, la conducta de la licenciada Santos Negrón podía configurar un acto de práctica ilegal de la profesión notarial al amparo de la Ley Núm. 17 de 10 de junio de 1939, 4 LPRA sec. 740. Asimismo, señaló que, en el contexto criminal, las actuaciones de la promovida podían constituir violaciones a los Artículos 213 y 220 del Código Penal de Puerto Rico, según enmendado, 33 LPRA secs. 5283 y 5290, respectivamente.
[4] *Contestación a moci[ó]n*, pág. 1.

3. Que el 25 o 26 de noviembre de 2022 colocó al documento su firma y estampó su sello notarial. No obstante, afirmó que no le colocó el número de testimonio, ni la fecha.

4. Que el 29 de noviembre de 2022, cuando le incautaron su obra notarial, el mencionado testimonio se quedó en una bandeja de documentos pendientes en su oficina y los otorgantes fueron a recogerlo el 24 de abril de 2023.

5. Que el 24 de abril de 2023, le colocó el número de testimonio que pensaba correspondía y "le puso la fecha errónea por la costumbre de fechar los documento[s] cuando se le entrega el documento" a quien los suscribe.[5]

6. Que luego de haber sido suspendida de la práctica notarial, "no h[a] otorgado ningún documento por[que] sabe[...] y es[…] consciente de que [le] está prohibido".[6]

Asimismo, aseveró que entendía que le podía entregar el documento a su cliente en una fecha posterior, toda vez que lo realizó el 25 o 26 de noviembre de 2022, cuando aún no había sido separada del ejercicio de la práctica notarial. Sin embargo, reconoció que, luego de analizar la moción que ODIN presentó al respecto, se percató de que cometió **"una imprudencia inexcusable"** y que su "actuación fue sin pensar y sin analizarla a profundidad".[7]

Mediante una Resolución de 12 de junio de 2023, esta Curia ordenó a ODIN a expresarse sobre el escrito que presentó la licenciada Santos Negrón.[8] Oportunamente, ODIN presentó su posición. En síntesis, planteó que la letrada admitió haber

---

[5] Íd.
[6] Íd., pág. 2.
[7] Íd., pág. 2 (Énfasis suplido).
[8] En la misma Resolución también se le refirió el asunto a la Oficina del Procurador General para que realizara la investigación de rigor y rindiera el *Informe* correspondiente.

cometido "una imprudencia inexcusable" al desempeñar sus funciones notariales, por lo que destacó la seriedad y la sensibilidad del asunto. Además, tras examinar la declaración jurada en cuestión, con fecha de 24 de abril de 2023, ODIN destacó que:

1. Tanto la fecha como el número de testimonio asignado ("testimonio de autenticidad") **aparecen impresos** en el cuerpo del documento, siendo dicha impresión similar a aquella que se obtiene **utilizando un programa** ("software") **de procesamiento de textos de un sistema computarizado.**

2. El recibo del sello a favor de la SAL […] adherido al documento cuyas firmas fueron legitimadas tiene fecha de **21 de abril de 2023.**

3. Se aprecia en el documento que el **sello notarial estampado está sobrepuesto al recibo del sello** a favor de la SAL adherido al documento.

4. Se aprecia en el documento que **el sello notarial estampado está sobrepuesto a la última oración del juramento redactado** (oración que inicia con "[. . .] hoy 24 de abril de 2023".).[9]

Tras esta exposición, ODIN aludió a varios aspectos que la letrada no abordó, discutió o fundamentó en su comparecencia:

1. [P]or qué no informó a […] ODIN, por conducto de la Inspectora de Protocolos a cargo del proceso o mediante comunicación al Director, que existían documentos en una bandeja de su oficina cuyas firmas […] [presuntamente] habían sido legitimadas en una fecha previa a su suspensión y que estos se encontraban pendientes de entrega a las partes requirentes.

2. Explicar cuántos documentos adicionales de similar naturaleza y condición, si alguno, mantuvo en su posesión posterior a la fecha de su suspensión.

---

[9] *Moción en cumplimiento de orden*, pág. 3 (Énfasis en el original).

3. Si era su práctica (uso y costumbre) el fechar y asignar los números de testimonios cuando las personas requirentes iban a recoger los documentos, no cuando legitimaba las firmas.

4. [P]or qué omitió detallar en su Informe de Actividad Notarial Mensual del mes de noviembre de 2022 la legitimación del testimonio plasmado en la Declaración Jurada ante [la] […]consideración [del Tribunal].

5. Exponer cuál fue la razón (justificación) por la cual no registró los datos del documento legitimado en el Volumen Número 32 (Asientos Número 49,927 al Número 51,022) entregado a la ODIN, por conducto de la Inspectora de Protocolos asignada al proceso, en el mes de **enero de 2023.**

6. [P]or qué omitió hacer expresión alguna de que el sello notarial estampado se encontraba sobrepuesto al recibo del sello a favor de la SAL adherido al documento con fecha de 21 de abril de 2023, cuando alegó en su escrito que dicho "ponche notarial" había sido "colocado" en la Declaración Jurada en el mes de noviembre de 2022.

7. Explicar […] por qué el sello notarial estampado se encontraba sobrepuesto a la última oración del juramento, redactada utilizando un programa de procesamiento de texto, y que lee 24 de abril de 2023.

8. Toda vez que no contaba con un duplicado de su sello notarial por haber sido este incautado en noviembre de 2022, qué explicación, si alguna, tenía para ilustrar a este Honorable Foro sobre la razón por la cual ese sello se encontraba sobrepuesto tanto en el recibo del sello a favor de la SAL como en la última oración del juramento en el documento examinado.[10]

Ante ello, ODIN argumentó que las explicaciones de la licenciada Santos Negrón resultaban **inverosímiles** y que sus acciones indicaban que actuó como notaria, a pesar de su suspensión, en contravención a las normativas aplicables vigentes.

---

[10] *Moción en cumplimiento de orden*, págs. 7-8 (Énfasis en el original).

Finalmente, el 14 de agosto de 2023 la Oficina del Procurador General (OPG) nos remitió el *Informe* que elaboró sobre los hechos que nos ocupan. En resumen, luego de examinar las distintas comparecencias de las partes, los documentos que obran en el expediente y aquellos que obtuvo como parte de su investigación, OPG concluyó que la licenciada Santos Negrón infringió los Cánones 9, 33, 35 y 38 del Código de Ética Profesional, infra. De este modo, OPG puntualizó que no existía controversia fáctica y que, dada la gravedad de la conducta desplegada, le recomendaba a esta Curia que se le impusiera a la letrada una sanción severa, que podría incluir la suspensión del ejercicio de la abogacía.

Oportunamente, la licenciada Santos Negrón reaccionó al *Informe* de OPG. En síntesis, esbozó que: (a) reiteraba la explicación que brindó sobre lo sucedido; (b) si bien admitía haber cometido "una imprudencia inexcusable", enfatizaba que el documento se suscribió y selló cuando todavía no se había incautado la obra protocolar; (c) en ningún momento después de la incautación de la obra protocolar actuó como notaria; (d) no violó disposición legal alguna; (e) no les ha causado daño a sus clientes ni a terceras personas, y (f) no violó los cánones que señaló OPG.

Expuesto el trasfondo fáctico, procedemos a consignar el marco legal aplicable.

II

La conducta de las y los miembros de la profesión legal se rige por los postulados contenidos en el Código de Ética

Profesional, 4 LPRA Ap. IX. Este ordenamiento tiene como norte promover el desempeño profesional de los abogados y las abogadas conforme a los más altos principios de conducta decorosa. In re Ocasio Bravo, 209 DPR 1043, 1051 (2022). Esto, a su vez, redunda en beneficio de la profesión, de la ciudadanía y de nuestras instituciones de justicia. In re Rodríguez Lugo, 201 DPR 729, 735 (2019); In re Cruz Liciaga, 198 DPR 828, 834 (2017).

Toda vez que en los procedimientos disciplinarios contra los abogados y las abogadas puede afectarse su título profesional y, con ello, el derecho fundamental a ganarse el sustento, el estándar probatorio requerido para imponer sanciones disciplinarias a un o una miembro de la profesión legal es mayor al que se requiere en los procesos civiles. In re Irizarry Rodríguez, 193 DPR 663, 667 (2015). De ahí que la acción disciplinaria debe estar basada en prueba clara, robusta y convincente, no afectada por reglas de exclusión ni a base de conjeturas. In re Ramírez Salcedo, 199 DPR 208, 216 (2017); In re Caratini Alvarado, 153 DPR 575, 584-585 (2001). La prueba clara, robusta y convincente es aquella que "produce en un juzgador [o juzgadora] de hechos una convicción duradera de que las contenciones fácticas son altamente probables". In re Irizarry Rodríguez, supra, pág. 667 (Citas omitidas).

**A. Canon 9 del Código de Ética Profesional**

El Canon 9 del Código de Ética Profesional, supra, requiere que los abogados y las abogadas observen para con los tribunales una conducta que se Caracterice por el mayor

respeto y diligencia. Como corolario de ese deber, "se exige que los abogados [y las abogadas] cumplan pronta y diligentemente las órdenes de todos los tribunales". In re Hernández López, 197 DPR 340, 348 (2017). Véase también: In re Villalba Ojeda, 193 DPR 966, 973 (2015). Así pues, es una norma reiterada que la desatención a las órdenes de un tribunal constituye un grave insulto a su autoridad. In re Ocasio Bravo, supra, pág. 1052; In re González Vázquez, 200 DPR 224, 227 (2018).

### B. Canon 33 del Código de Ética Profesional

La práctica de la notaría en Puerto Rico está regida por las disposiciones de la Ley Notarial, el Reglamento Notarial de Puerto Rico (Reglamento Notarial), 4 LPRA Ap. XXIV, el Código de Ética Profesional, supra, y las leyes pertinentes a los negocios y los documentos que este profesional autoriza. In re Sánchez Reyes, 204 DPR 548, 565 (2020).

Por su parte, el Canon 33 del Código de Ética Profesional, supra, prohíbe la práctica de la abogacía y de la notaría en Puerto Rico sin la debida autorización de este Tribunal. Es por ello por lo que aquellas y aquellos miembros de la profesión legal que ejerzan la abogacía y la notaría en Puerto Rico, mientras están suspendidas o suspendidos del ejercicio de esta, podrán ser objeto, naturalmente, de sanciones disciplinarias. Véase: S. Steidel Figueroa, Ética para juristas: Ética del abogado y responsabilidad disciplinaria, San Juan, Ed. SITUM, 2016, pág. 127.

A tono con lo anterior, esta Curia ha expresado que "[e]s impropio que durante el periodo en que un abogado [o una abogada] está suspendido [o suspendida], [e]ste [o esta] realice actos que constituyan el ejercicio de la profesión o la apariencia de ello". In re Gordon Menéndez I, 171 DPR 210, 215 (2007). Además, hemos postulado que "el ejercicio de la profesión durante el tiempo de suspensión constituye una práctica ilegal de la abogacía, [...] y [tal proceder] debe ser sancionado severamente porque constituye un desafío insólito a nuestro poder inherente para reglamentar la profesión". Íd. **Estas enunciaciones son igualmente aplicables a profesionales del Derecho que ejerzan desautorizadamente el notariado.**

**C. Canon 35 del Código de Ética Profesional**

El Canon 35 del Código de Ética Profesional, supra, dispone:

> La conducta de cualquier miembro de la profesión legal **ante los tribunales, para con sus representados [o representadas] y en las relaciones con sus compañeros [o compañeras] debe ser sincera y honrada.**
>
> **No es sincero ni honrado el utilizar medios que sean inconsistentes con la verdad** ni se debe inducir al juzgador [o la juzgadora] a error utilizando artificios o una falsa relación de los hechos o del derecho. Es impropio variar o distorsionar las citas jurídicas, suprimir parte de ellas para transmitir una idea contraria a la que el verdadero contexto establece u ocultar alguna que le es conocida.
>
> **El abogado [o la abogada] debe ajustarse a la sinceridad de los hechos al examinar los [y las] testigos, al redactar afidávits u otros documentos, y al presentar causas.** El destruir evidencia documental o facilitar la desaparición de evidencia

testifical en un caso es también altamente reprochable. (Énfasis suplido).

Al respecto, hemos advertido que "la conducta de un abogado [o una abogada] debe ser sincera y honrada frente a todos y ante todo tipo de acto". In re Molina Oliveras, 188 DPR 547, 553 (2013) (Citas omitidas). Véase también: In re Cardona Estelritz, 2023 TSPR 100, 212 DPR __ (2023); In re Ojeda Martínez, 185 DPR 1068, 1074-1075 (2012). No es defensa en estos casos el que no se haya obrado de mala fe, deliberadamente o sin la intención de engañar, como tampoco lo es que no se haya causado daño a un tercero. In re Nieves Nieves, 181 DPR 25, 41-42 (2011).

Lo esencial para que se configure una infracción al Canon 35 es que se falte a los valores de honradez y veracidad, pilares de la profesión legal. In re Molina Oliveras, supra, pág. 554. De esta forma, todo abogado y toda abogada tiene la ineludible obligación de ajustarse a la fidelidad de los hechos, tanto en su gestión profesional como en sus gestiones personales. In re Meléndez Figueroa, 166 DPR 199, 207 (2005); In re Sepúlveda Girón, 155 DPR 345, 359 (2001). "Para actuar de conformidad con el mandato de este canon, es indispensable que los abogados [o las abogadas] se aseguren de no proveer información falsa o incompatible con la verdad y de no ocultar información cierta que deba ser revelada". In re Aponte Morales, 2023 TSPR 13, 211 DPR (2023). En conclusión, y muy relevante a la conducta que aquí nos corresponde justipreciar, "el abogado o la abogada que le provee al tribunal información falsa o que no se ajuste a la verdad, o

que oculte información que deba ser revelada, incumple con el Canon 35". In re Jusino Torres, 210 DPR 919, 933 (2022).

### D. Canon 38 del Código de Ética Profesional

Como parte de los preceptos éticos que rigen la profesión, los abogados y las abogadas tienen el deber de exaltar el honor y la dignidad de la profesión, así como evitar la apariencia de conducta impropia. Estas obligaciones éticas están contenidas en el Canon 38 del Código de Ética Profesional, supra, el cual, en lo pertinente, dispone:

> **El abogado [o la abogada] deberá esforzarse, al máximo de su capacidad, en la exaltación del honor y dignidad de su profesión, aunque el así hacerlo conlleve sacrificios personales y debe evitar hasta la apariencia de conducta profesional impropia.**
>
> .   .   .   .   .   .   .   .
>
> Por razón de la confianza en él [o ella] depositada como miembro de la ilustre profesión legal, todo abogado [o abogada], tanto en su vida privada como en el desempeño de su profesión, **debe conducirse en forma digna y honorable.**
>
> .   .   .   .   .   .   .   .
>
> (Énfasis suplido).

Este Tribunal ha sido enfático en que "cada abogado [y abogada] es un espejo en el cual se refleja la imagen de la profesión, por lo que debe actuar, tanto en su vida profesional como en su vida privada, con limpieza, lealtad y el más escrupuloso sentido de responsabilidad". In re Vélez Lugo, 180 DPR 987, 996 (2011). Por ello, los abogados y las abogadas "deben evitar incluso la mera apariencia de impropiedad ya que esta puede ser […][perjudicial] a la

confianza en las instituciones de justicia y en los miembros de la profesión legal". In re Suárez Marchan, 159 DPR 724, 745 (2003).

III

Procedamos a disponer de la cuestión disciplinaria ante nuestra consideración. Un estudio puntilloso del expediente de este asunto, así como de las normas deontológicas que lo rigen, nos llevan a coincidir con la apreciación y recomendación de ODIN y OPG. La licenciada Santos Negrón ha desplegado una conducta crasamente antiética que amerita nuestra intervención y enérgica represión. Veamos.

De entrada, es menester resaltar que la licenciada Santos Negrón aceptó que preparó, selló y firmó la declaración jurada en cuestión. Ahora bien, sostuvo que, según su mejor recuerdo, legitimó el documento el 25 o 26 de noviembre de 2022 y que estampó su sello notarial y firma **antes** de que este fuera incautado; y que **en una fecha posterior** colocó la fecha y el sello del arancel. Sin embargo, al examinar a simple vista el documento, no cabe duda de que el sello notarial está sobrepuesto sobre el sello de SAL que tiene fecha de 21 de abril de 2023. A su vez, se aprecia que el sello notarial de la letrada está sobrepuesto a la fecha del juramento de 24 de abril de 2023.[11] Por ende, la explicación o la justificación de la licenciada Santos Negrón para la autorización de este testimonio de autenticidad, con fecha de

---

[11] Cabe destacar que la fecha del documento y el número de testimonio están mecanografiados en la misma tipografía y tamaño que el resto del documento que la letrada alegó que preparó el 25 o 26 de noviembre de 2022.

24 de abril de 2023, es simple y llanamente **insostenible e increíble.**[12] De hecho, del índice notarial de la letrada de noviembre de 2022 no surge que se haya legitimado alguna declaración jurada a los allí firmantes, ni se presenta evidencia adicional para sostener que el documento en cuestión se autorizó en noviembre de 2022 —previo a la incautación de su obra protocolar y el sello notarial—, en lugar de abril de 2023. En esta coyuntura, conviene recordar la expresión que hiciéramos en Pueblo v. Luciano, 83 DPR 573, 582 (1961), a los efectos de que **"[l]os jueces no debemos, después de todo, ser tan inocentes como para creer declaraciones que nadie más creería"**. (Énfasis suplido). Íd. Ciertamente, de la totalidad de las circunstancias se desprende de forma clara, robusta y convincente que la licenciada Santos Negrón fechó y estampó su sello notarial en una declaración jurada mientras estaba impedida de ejercer la notaría.

En consecuencia, concluimos que la licenciada Santos Negrón infringió los Cánones 9 y 33 del Código de Ética Profesional, supra, al ejercer ilegalmente la notaría, a pesar de que este Tribunal ordenó su suspensión el 8 de febrero de 2023. Asimismo, concluimos que infringió el Canon 35 del Código de Ética Profesional, supra, cuando faltó a la verdad al informar que estampó en la mencionada declaración jurada su sello notarial antes de que este fuera incautado y

---

[12] Aun si para fines de la argumentación aceptáramos la excusa ofrecida, como mínimo, la licenciada Santos Negrón exhibió un descuido craso y un claro menosprecio al rigor que exige el ejercicio de la notaría.

que no contaba con un sello notarial adicional. De igual forma, la letrada se apartó de los preceptos del Canon 38 del Código de Ética Profesional, supra, toda vez que sus actuaciones son indiscutiblemente **impropias y no exaltan el honor y la dignidad de la honrosa profesión de la abogacía.**

IV

Tras colegir que la licenciada Santos Negrón se apartó de los preceptos de los Cánones 9, 33, 35 y 38 del Código de Ética Profesional, supra, nos corresponde ponderar la sanción a imponer. En el pasado hemos delineado varios factores que han de guiarnos a la hora de emprender esa faena. In re De León Rodríguez, 190 DPR 378, 396 (2015). En ese sentido, hemos enunciado los siguientes:

> (1) la reputación del abogado [o la abogada] en la comunidad; (2) su historial disciplinario; (3) si la conducta es aislada; (4) si medió ánimo de lucro; (5) **si se presentó una defensa frívola de su conducta**; (6) **si ocasionó perjuicio a alguna parte**; (7) si resarció al cliente [o la clienta]; (8) **si demostró aceptación o arrepentimiento sincero por la conducta que le fue imputada**, y (9) otros atenuantes o agravantes que surjan de los hechos. (Énfasis suplido). In re Rádinson Pérez, 204 DPR 522, 542 (2020).

Asimismo, hemos postulado que "casos similares ameritan sanciones similares", por lo que las sanciones impuestas en casos semejantes sirven como guía. In re González Acevedo, 165 DPR 81, 104 (2005). En atención a esto, es meritorio señalar que la licenciada Santos Negrón lleva más de treinta años ejerciendo la profesión legal y la notaría y fue suspendida el 8 de febrero de 2023 del ejercicio de la última. Además, esta **no** reconoció la gravedad de su conducta, no

mostró arrepentimiento, presentó una defensa increíble y frívola, y sus actuaciones provocaron que actualmente circule en el tráfico jurídico un documento con un testimonio de autenticidad nulo. A la luz de estos elementos, del resultado de la labor investigativa de la OPG y de la gravedad de la conducta desplegada sobre la que no existe controversia, la letrada debe ser reprendida de la forma más severa. Así, decretamos su suspensión del ejercicio de la abogacía de manera inmediata e indefinida.[13]

V

Por los fundamentos expuestos, decretamos la suspensión de la licenciada Santos Negrón del ejercicio de la abogacía de manera inmediata e indefinida.

Le ordenamos a la señora Santos Negrón a notificar a todos y todas sus clientes de su inhabilidad para continuar representándoles y a devolverles tanto los expedientes de los casos pendientes como los honorarios recibidos por trabajos no realizados. Además, deberá informar inmediatamente de su suspensión a los foros judiciales y administrativos en los que tenga algún asunto pendiente. Deberá acreditar y certificar ante este Tribunal el cumplimiento con lo anterior, incluyendo una lista de los clientes y los foros a quienes les notificó de su suspensión, dentro del término de

---

[13] En In re Sepúlveda Valentín, 162 DPR 785 (2004), suspendimos por dos años a un abogado que, mientras estuvo suspendido del ejercicio de la profesión legal, hizo gestiones a favor de un cliente. En In re López de Victoria Brás, 164 DPR 193 (2005), suspendimos indefinidamente a un abogado que firmó y presentó en el tribunal una moción mientras estuvo suspendido del ejercicio de la abogacía. De otra parte, en In re Scott, 175 DPR 474 (2009), denegamos la petición de reinstalación de un abogado que incurrió en la práctica ilegal de la abogacía en Florida.

30 días contado a partir de la notificación de la presente Opinión *Per Curiam*. No hacerlo pudiera conllevar que no se le reinstale al ejercicio de la abogacía de solicitarlo en el futuro.

Se dictará Sentencia de conformidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

*In re:*

TS-9,614

Elaine Santos Negrón

SENTENCIA

En San Juan, Puerto Rico, a 26 de septiembre de 2023.

Por los fundamentos expuestos en la Opinión *Per Curiam* que antecede, la cual se hace formar parte de la presente Sentencia, decretamos la suspensión de la Lcda. Elaine Santos Negrón del ejercicio de la abogacía de manera inmediata e indefinida.

Le ordenamos a la señora Santos Negrón a notificar a todos y todas sus clientes de su inhabilidad para continuar representándoles y a devolverles tanto los expedientes de los casos pendientes como los honorarios recibidos por trabajos no realizados. Además, deberá informar inmediatamente de su suspensión a los foros judiciales y administrativos en los que tenga algún asunto pendiente. Deberá acreditar y certificar ante este Tribunal el cumplimiento con lo anterior, incluyendo una lista de los clientes y los foros a quienes les notificó de su suspensión, dentro del término de 30 días contado a partir de la notificación de la presente Opinión *Per Curiam* y Sentencia. No hacerlo pudiera conllevar que no se le reinstale al ejercicio de la abogacía de solicitarlo en el futuro.

Notifíquese a la señora Santos Negrón de esta Opinión Per Curiam y Sentencia por medio del correo

electrónico registrado en el Registro Único de Abogados y Abogadas de Puerto Rico.

Lo acordó el Tribunal y certifica el Secretario del Tribunal Supremo. La Jueza Asociada señora Pabón Charneco, el Juez Asociado señor Rivera García y el Juez Asociado señor Estrella Martínez no intervinieron.


                              Javier O. Sepúlveda Rodríguez
                              Secretario del Tribunal Supremo