*In re* Fred H. Martínez, Lawrence Odell II.

*Número:* AB-98-46 *Resuelto:* 25 de junio de 1999

*Rubén T. Nigaglioni* y *Mario L. Paniagua*, del *Bufete McConnell Valdés*, y *Luis Mariano Negrón Portillo*, abogados de los querellados; *Carlos Lugo Fiol, Procurador General*, y *Edda Serrano Blasini, Subprocuradora General*, abogados del Pueblo.

PER CURIAM: Mediante *Per curiam* de 12 de abril de 1999, *censuramos enérgicamente* a los abogados Fred H. Martínez y Lawrence Odell por incurrir en conducta contraria al Canon 35 del Código de Ética Profesional, 4 L.P.R.A. Ap. IX, dispositivo de que "[e]l abogado debe ajustarse a la sinceridad de los hechos al examinar los testigos, al redactar afidávit u otros documentos, y al presentar causas". Nuestra decisión estuvo basada en que incontrovertidamente quedó demostrado que ambos abogados sus-

cribieron bajo juramento, en escritura pública, hechos cuya falsedad conocían.([1]) Nos piden reconsideración.

## I

Los licenciados Martínez y Odell fundamentan su solicitud en varios planteamientos. Examinémoslos. *Primero*, aducen que en 1981, año en que otorgaron la escritura pública, el alcance del Canon 35 del Código de Ética Profesional, *supra*, a la luz de la jurisprudencia existente, estaba limitado a actuaciones de abogados que ejercían ante los tribunales o como notarios. Nos dicen que nuestra decisión es una ampliación del alcance del Canon 35, *supra*, que amerita ser aclarada. *Segundo*, sostienen que el quejoso Lcdo. Ralph Sierra Jr., conocía la supuesta conducta indebida desde años atrás y no hizo nada. *Tercero*, exponen que el licenciado Sierra Jr. excluyó de su queja al licenciado Colorado —aun cuando éste incurrió en la misma conducta— y tal proceder selectivo representa, de por sí, conducta antiética que debemos rechazar. Finalmente, insinúan parcialidad de este Tribunal, al calificar como "sorprendente" que no hayamos censurado al licenciado Colorado.

Por su parte, en su comparecencia, el Procurador General —cuya posición inicial fue la que avalamos—, nos plantea ahora que existen declaraciones indicativas de que el quejoso licenciado Sierra Jr., conocía los hechos desde que ocurrieron y no, desde 1992, según afirmó en su queja. Por esta razón, nos invita a que reevaluemos.

Además, los Lcdos. Marco A. Rigau, Antonio J. Colorado, José L. Calabria, e Ignacio Rivera han solicitado intervenir como *amicus curiae*. El licenciado Rigau señala que los abogados Martínez y Odell no faltaron a la verdad ni hubo en su ánimo intención de engañar al licenciado Sierra Jr. Dice conocerlos desde hace mucho tiempo, y nos

---

([1]) Específicamente resolvimos que faltaron a la verdad al suscribir la escritura pública Núm. 68,

da fe de su integridad y honestidad. Asimismo, plantea que a la luz de las comparecencias de los licenciados Colorado y Calabria, el quejoso licenciado Sierra Jr. pudo haber incurrido en conducta constitutiva de perjurio. Por su parte, el Colorado niega que al suscribir la escritura pública en 1981 hubiera intención de mentir o engañar. Insiste en que la inconsistencia con la verdad fue una inadvertencia o error; y califica de injusta nuestra decisión. Mientras, los licenciados Calabria y Rivera, entre otras cosas, conciben la actuación de los licenciados Martínez y Odell como un mero error "de juicio o de forma", no reñido con los postulados éticos. Asimismo, sugieren *parcialidad* de este Tribunal, destacando que nuestra decisión crea una apariencia de inequidad, pues no disciplinamos al licenciado Colorado, aun cuando éste también suscribió la misma escritura pública objeto de la declaración falsa.[2]

## II

De entrada, aclaramos las coordenadas adjudicativas de nuestra decisión del pasado 12 de abril. Constituye un evento más, en una serie de procedimientos judiciales y disciplinarios que involucran a varios abogados que laboraron en el disuelto bufete de abogados "Martínez, Odell, Calabria y Sierra". La disolución de dicha sociedad profesional en 1992, dio génesis a una larga cadena de disputas judiciales entre los abogados querellados y los abogados excluidos del nuevo bufete creado por Martínez y Odell, en unión al Lcdo. José L. Calabria.[3]

El primero de los casos que requirió nuestra intervención fue *Belk v. Martínez*, 146 D.P.R. 215 (1998). Allí resolvimos que los demandados Fred Martínez, Lawrence Odell, José L. Calabria y la sociedad profesional compuesta

---

[2] *Intervención*, Lcdo. licenciado Calabria, pág. 2; *Intervención*, licenciado Rivera, págs. 4–5.

[3] Los abogados se asociaron bajo el nombre "Martínez, Odell y Calabria".

por ellos —"Martínez, Odell y Calabria"— habían discriminado contra los Lcdos. John T. Belk Arce y Margarita Serapión por razón de matrimonio. Reconocimos a los demandantes Belk-Serapión derecho a ser indemnizados bajo la Ley Núm. 100 de 30 de junio de 1959, según enmendada, 29 L.P.R.A. secs. 146–151.

Subsiguientemente, resolvimos la presente queja. Quedan pendientes dos (2) quejas disciplinarias: Caso Núm. AB-98-44 instado por los Lcdos. Juan R. Cancio, Luz Vela y Brunilda Rodríguez, del bufete de abogados "Martínez, Odell y Calabria", contra los Lcdos. Margarita Serapión y John T. Belk Arce; y el Caso Núm. AB-98-99, promovido por el licenciado Sierra Jr. contra Martínez y Odell. En esta última, se aduce que Martínez y Odell mintieron bajo juramento en el proceso judicial por discrimen por razón de matrimonio que los abogados Serapión y Belk Arce instaron, y este Tribunal adjudicó. En su oportunidad, decidiremos esta queja, y el valor adjudicativo que debemos conferirle al dato de que en *Belk v. Martínez*, supra, avalamos las determinaciones de hechos del foro de instancia, que entre otras, no creyó el testimonio de los licenciados Martínez y Odell.([4])

---

([4]) En específico, el tribunal de instancia consignó en su sentencia:

"El testimonio del licenciado Fred Martínez en cuanto a su conocimiento sobre el matrimonio entre Belk y Margarita Serapión fue contradictorio: [e]n la deposición que se le tomó no mencionó en ningún momento que Rodríguez Poggi le había informado sobre el matrimonio. La teoría de los demandados que después cambió es a los efectos que ninguno de los demandados conocía del matrimonio entre éstos hasta tanto se obtuvo el certificado de matrimonio de dichos cónyuges. A preguntas de la licenciada Berkan durante el juicio[,] el licenciado Martínez testificó solamente de los rumores. No obstante[,] cuando su abogada la licenciada Belaval le interroga [é]l menciona por vez primera la conversación con Rodríguez Poggi y que éste le informa del matrimonio de Belk y la licenciada Serapión." *Breve relación procesal, determinaciones de hechos, conclusiones de derecho y sentencia*, caso Civil Núm. KAC–92–0820, esc. 2.

Asimismo, concluyó:

"99. El único otro testigo que los demandados presentaron para ofrecer una explicación relacionada con el despido de John Belk fue el demandado Lawrence Odell quien testificó que no tenía confianza en John Belk. Los hechos narrados por Odell no nos merecen credibilidad y de haber ocurrido los mismos no se desprende en forma alguna que den base para cuestionarse la confianza de Belk.

Una tercera queja por conducta profesional impropia contra los licenciados Martínez, Odell y Lamoso presentada en marzo de 1998, por hechos aparentemente ajenos a los conflictos que existen entre las partes involucradas en esta queja, fue desistida luego de formalizarse un acuerdo de transacción que incorporó, además, la disposición de varias demandas pendientes ante la Comisión Federal de Comunicaciones. *In re Fred H. Martínez y otros*, Caso Núm. AB-98-42; véase, *In re Applications of Westel Samos, Inc., y Westel, L.P.*, Caso Núm. FCC 99M-3.([5])

Ciertamente, la multiplicidad de procedimientos judiciales habidos entre las partes nos obliga a examinar con cautela los méritos de cada una de las quejas ante nuestra consideración, tal y como abogan los querellados Martínez y Odell. Aun así, sus argumentos en reconsideración y en las comparecencias especiales, nos convencen que debe subsistir la sanción que los censura.

## III

El mandato del Canon 35 del Código de Ética Profesional, *supra*, es claro([6]) todo abogado tiene la ineludible

---

"101. No le damos credibilidad al testimonio de Lawrence Odell a los efectos [de] que en marzo de 1992, John Belk supuestamente fue donde él y le dijo que 'people are choosing sides' y que el escogería el lado de Sierra." Breve relación procesal, determinaciones de hechos, conclusiones de derecho y sentencia, pág. 20.

([5]) Otros procesos judiciales generados por la disolución de la sociedad profesional son: *Sierra y otros v. Martínez y otros*, (caso Civil Núm. KPE 92–0228); *Martínez y otros v. Sierra y otros*, (caso Civil Núm. KAC 92–0558). Además, en el Tribunal Federal se instó *Serapión v. Martínez y otros*, (caso Civ. Núm. 93–1790).

([6]) En lo pertinente dispone:

"La conducta de cualquier miembro de la profesión legal ante los tribunales, para con sus representados y en las relaciones con sus compañeros debe ser sincera y honrada.

*"No es sincero ni honrado el utilizar medios que sean inconsistentes con la verdad* ni se debe inducir al juzgador a error utilizando artificios o una falsa relación de los hechos o del derecho....

*"El abogado debe ajustarse a la sinceridad de los hechos al examinar los testigos, al redactar afidávit u otros documentos, y al presentar causas. ..."* (Énfasis suplido.)

obligación de ajustarse a la fidelidad de los hechos tanto en su gestión profesional —ya sea como notario o como abogado litigante— así como en sus gestiones personales. Incluye actuaciones en las que se despoja de su toga de abogado y convierte en cliente de otro abogado.

■ *Ceñirse a la verdad* según el Canon 35 del Código de Ética Profesional, *supra*, va más allá que ocasionar perjuicio a tercero o deliberadamente defraudar o engañar. Se infringe este deber deontológico con el hecho objetivo de faltar a la verdad en funciones propias de un abogado o cuando, actuando como ciudadano común, se pretende realizar actos o negocios de trascendencia jurídica. *Más que un ideal irrealizable, la verdad es atributo inseparable del ser abogado y, sin ésta, no podría la profesión jurídica justificar su existencia.*

Los querellados Martínez y Odell no controvierten el dato esencial de que los hechos que consignaron en la escritura pública no eran veraces. Su alegato principal de que se trató de una simple inadvertencia no convence. Se trata de un hecho material lo suficientemente importante en el contexto general que motivó la otorgación de la escritura pública, como para que no pasara desapercibido. De hecho, en su comparecencia el otro otorgante licenciado Colorado, reconoce que para no incurrir en la falta que motivó nuestra enérgica censura "quizás se debió haber aclarado con más énfasis que se firmaba dicha escritura para retrotraerse al momento de constituirse el plan, y que por eso se decía que éramos solamente tres (3) socios". Comparecencia Especial del Lcdo. Antonio J. Colorado, pág. 3.

■ Por otro lado, la falta de veracidad de los otorgantes, independientemente de su intención y de si se ocasionó daño a tercero, *es inexcusable dado el sitial preferente que nuestro ordenamiento otorga a los instrumentos públicos.* Por su condición de abogados, conocían cabalmente la naturaleza del acto que realizaban. *In re Colón Ramery*, 133 D.P.R. 555 (1993). Tenían la obligación de brindar al nota-

rio los hechos exactos que declaraban. Su responsabilidad no puede ser subestimada con el eufemismo de que se trató de "un mero error de juicio" o "de forma". Faltaron claramente a la verdad, y no quedan excusados aludiendo a las motivaciones que pudo haber tenido el licenciado Sierra Jr. al formular la presente queja.

Sobre el quejoso, licenciado Sierra Jr., —conociera o no el contenido exacto de la escritura desde que se otorgó— lo cierto es que ello es inmaterial para la determinación de si los abogados Martínez y Odell violaron el Canon 35 del Código d e Ética Profesional, *supta.*

Independientemente de su inmaterialidad, aunque a simple vista las versiones ofrecidas por el licenciado Sierra Jr. y los licenciados Calabria y Colorado parecen conflictivas, un examen cuidadoso de los documentos sometidos refleja que las comparecencias de los licenciados Calabria y Colorado no refutan cabalmente la posición de Sierra Jr. de que conoció el contenido *exacto* de la escritura pública en el año 1992, cuando obtuvo copia del plan de pensiones del bufete y de la escritura pública otorgada en 1981. Si bien el licenciado Calabria sostiene en contrario —que el licenciado Sierra Jr. conocía el contenido del plan y de la escritura pública desde el *mismo momento en que se otorgó*—, sus alegaciones en todo momento se circunscriben a aducir que el licenciado Sierra Jr. *conocía o debió haber conocido* su contenido. Comparecencia del Procurador General, pág. 2. Ello es insuficiente para refutar lo expuesto por el licenciado Sierra Jr.

Finalmente, no podemos pasar por alto las insinuaciones de parcialidad que se nos atribuye. *No sólo son altamente impropias, sino que en nada desvirtúan la falta de veracidad* de los licenciado Martínez y Odell. Como señalamos previamente, la consideración de las quejas disciplinarias contra los involucrados en los hechos que dieron base a nuestra decisión de 12 de abril pasado *no ha finalizado.* Somos plenamente conscientes de que el licen-

ciado Colorado suscribió también la escritura pública en la que los licenciados Martínez y Odell vertieron información falsa. Al igual que ambos, el licenciado Colorado en su momento responderá por su conducta.

Por los fundamentos expuestos, *se dictará sentencia para proveer no ha lugar a la moción de reconsideración de los licenciados Martínez y Odell.*

*Se dictará la correspondiente sentencia.*

El Juez Asociado Señor Rebollo López emitió opinión disidente. El Juez Asociado Señor Corrada del Río reconsideraría y limitaría la sanción a una amonestación. El Juez Asociado Señor Fuster Berlingeri no intervino.

— O —

Opinión disidente emitida por el Juez Asociado Señor Rebollo López.

(En reconsideración)

El pasado 12 de abril de 1999 disentimos de la determinación de la mayoría de los integrantes del Tribunal de "censurar enérgicamente" a los Lcdos. Fred H. Martínez y Lawrence Odell. Entendimos entonces —*posición que reiteramos en el día de hoy*— que no procedía la imposición de sanción disciplinaria de clase alguna por razón de que la conducta en que incurrieron dichos abogados *no* trascendió los línderos de un mero error de juicio, carente dicha conducta de intención de clase alguna, de parte de dichos abogados, de causarle daño a otra persona. De hecho, la ausencia en el presente caso de daño alguno a tercero es algo que, incluso, la Mayoría se ve obligada a reconocer.

En el día de hoy, la Mayoría ha entendido procedente publicar una Opinión per curiam mediante la cual deniega la moción de reconsideración que dichos abogados han radicado. Como de ordinario sucede, en el diario vivir, al una persona intentar explicar o justificar un error que ha

cometido, la Mayoría comete un error aun más grave que el que cometió el pasado 12 de abril de 1999.

Nos referimos, naturalmente, a la norma que hoy establece el Tribunal a los efectos de que el Canon 35 del Código de Ética Profesional, 4 L.P.R.A. Ap. IX, se aplica a conducta, o gestiones personales, realizada por los miembros de la profesión que *no* tienen nada que ver con el ejercicio de la misma e independientemente del hecho de que el abogado haya tenido, o no, intención de faltar a la verdad o de causarle daño a otra persona.

En primer lugar, una lectura del primer párrafo del mencionado Canon 35 claramente demuestra que esta posición es una totalmente errónea; el mismo establece que la *"conducta* de cualquier miembro de la profesión legal *ante los tribunales, para con sus representados y en las relaciones con sus compañeros* debe ser sincera y honrada". (Énfasis suplido.) Canon 35 del Código de Ética Profesional, *supra.* El referido Canon 35 *no* puede ser más claro. El mismo obviamente se refiere a conducta del abogado directamente relacionada con el ejercicio de la profesión y no en relación a gestiones personales del abogado.

En segundo término, en el día de hoy la Mayoría ha establecido un criterio de "responsabilidad absoluta" en relación con la posible infracción de las disposiciones del citado Canon 35 del Código de Ética Profesional al expresar que, a los fines antes mencionados, resulta irrelevante el hecho de que el abogado tuviera la intención, o no, de causarle daño a otro. Tal parece que la Mayoría entiende está lidiando con la comisión de delitos públicos. *No* podemos refrendar tal posición.

Por todo lo anteriormente expresado es que nos vemos obligados, nuevamente, a diferir del criterio mayoritario en el presente caso.[1]

---

[1] Rechazamos, de manera enérgica y al igual que lo hace la mayoría de los integrantes del Tribunal, la velada imputación de parcialidad que se le hace a los miembros del Tribunal. Ello *no* sólo es totalmente infundado sino que completamente impropio de parte de los abogados que la hacen.